**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

United States of America,                            Case No. 3:10CR247

        Plaintiff

v.                                           **ORDER**

Scott A. Essinger,

        Defendant

       This is a criminal case in which the government has charged the defendant with being a felon in unlawful possession of a firearm. Deputies of the Hancock County, Ohio, Sheriff's Department found the weapon during execution of a search warrant.

       Pending is the defendant's motion to suppress. (Doc. 10). For the reasons that follow, I deny the motion.

**Background**

       The following information was in the December 15, 2009, affidavit (Doc. 10-1) which Hancock County Sgt. Thomas Blunk submitted that afternoon in support of the search warrant.

       Earlier that day the Principal of the Arlington Elementary School, Ms. Bodnarik, contacted Sgt. Blunk about suspected improper activity involving a fifth grade pupil. The pupil had "revealed

that [the defendant] is taking pictures of her naked and printing those pictures on a machine in there [*sic*] house."

Sgt. Blunk and a Hancock County Children Services Caseworker, Brianna Westrick, went to the school to investigate the allegations. Sgt. Blunk and Ms. Westrick spoke with Ms. Bodnarik and School Counselor Heacock. According to the affidavit:

> Bodnarik was approached by a friend of [the pupil] who told her the [pupil] told of her mom's boyfriend taking naked pictures of her and [the pupil] is paid money by him to take the pictures. That when she gets older he will pay her more money to look at her body and take pictures.
>
> Bodnarik and Heacock brought [the pupil] to the office and spoke with her asking her about these secrets that she had. They advised her at first [the pupil] said he [*sic*] could not tell her secrets because Scott would get made and not like her any more. During the conversation [the pupil] told them that Scott told her if she ever told anyone [the pupil] would never see her mom again and would have to live with her dad.
>
> [The pupil] then told that Scott was taking pictures of her mom naked, that it was ok because he takes pictures of her mom naked and shows those picture [*sic*] to her. When they asked if anyone has ever touched her, she described Scott as touching her when she [was] naked, she described him touching her to move her into different positions to take these pictures.
>
> Bodnarik said [the pupil] was not willing to talk much more about this.
>
> After speaking with Bodnarik and Heacock [the pupil] was brought into the office. I moved to adjoining room and allowed Brianna to conduct the interview with [the pupil].
>
> Upon completion of the interview Brianna advised me that [the pupil] was reluctant to talk about this, however she did tell her that Scott has asked her to take her ([the pupil]) clothes off and then taken pictures of her. That this has happened in the house, in the barn and outside. [The pupil] told Brianna that Scott hides the pictures from her mom. [The pupil] also told her that Scott takes pictures of her mom with no clothes on and has showed these pictures to her.
>
> [The pupil] also told her that Scott played Truth or Dare and he dared her to take her shirt off while they drove a half of a mile. They were in a vehicle. Scott also told her

> that [the pupil's] mom had done the same thing and that it was ok. [The pupil] said she did take her shirt off while in the vehicle with Scott.
>
> [The pupil] told Brianna that Scott touches her when he moves her to take more pictures. When asked when this last happened, [the pupil] thought maybe a year ago, then stated it does not happen much now because it is winter outside. Based on the assessment of the caseworker, [the pupil] does not seem to be accurate in determining lengths of time.
>
> [The pupil] told Brianna that Scott takes the pictures, plugs the camera in a machine in the house and prints the pictures of her naked and then hides them so her mom can not find them.

(*Id*. at 4, 5).

The affidavit also states that in May, 2008, the pupil had made a report to Children Services where the she had "disclosed that [the defendant] was taking her . . . into the bedroom, removing her clothes and taking pictures and giving her wedgies. An investigation was conducted and during that [the pupil] refused to disclose any information pertaining to the pictures."

The defendant alleges that the affidavit's statement the pupil had "refused to disclose any information pertaining to the pictures" in May, 2008, was false.

The defendant bases that contention on Sgt. Blunk's May 9, 2008, report of his investigation of that earlier allegation by the pupil. (*See* 4/25/11 Suppr. Hrg. Tr. Exh. C, pp. 36-41).

The pertinent portions of that report state:

> I received a report from Children Services concerning possible sexual abuse to a 9 year old female. I was advised of the following:
>
> [The pupil] disclosed that she does not want to go with her mom, due to the fact that they will be going to her mom's boyfriend's house. [The pupil] disclosed that her mom's boyfriend, Scott, takes her into the bedroom, removes her clothing, gives her wedgies and takes pictures.
> \* \* \* \* \*
> Myself and [Caseworker] Jenny [Snyder] met with [the pupil] at Center . . . .
> \* \* \* \* \*

3

> [The pupil] said one thing she did not like is when her mom takes her to Scott's house. When asked why, [the pupil] explained that Scott always gives her wedgies, that Scott does not do that anymore because they are all moving and he is busy lifting heavy things.

(*Id.* at 39-40).

In addition, the 2008 report indicated that [the pupil] said she liked Scott, and that they picked on each other. Once he "put half her body between his legs and squeezed hard that it hurt and then bent her back. She also said Scott will put her in head locks and pinches her." (*Id.* at 40). The pupil "never indicated that this was anything more than just them picking on each other and one time grabbed the front and back of her underwear and lifted her in the air giving her a wedgie and mom took a picture of that on Scott's phone." (*Id.*).

The pupil "never indicated that this was anything more than just them picking on each other." She "acknowledge[d] that when she has done bad things Scott will slap her butt, over her pants as punishment." (*Id.*).

Sgt. Blunk's report also stated:

> [The pupil] said Scott has never removed her clothes and touched her anywhere, but on the butt when he has slapped it or during the wedgies. [The pupil] said she likes Scott and she always tries and give him sugars and he always pulled away from her. [The pupil] said sugars are hugs and kisses.

(*Id.*).

The pupil's mother "acknowledged that Scott and [the pupil] will wrestle around and pick at each other, but denied that Scott reaches down [the pupil's] pants and grabs her underwear, that he will grab the edge of her jeans." (*Id.*).

On the basis of this interview, Sgt. Blunk concluded that the allegations of sexual abuse were "unfounded." (*Id.* at 41).

Sgt. Blunk's search warrant affidavit included none of this information from the May, 2008, investigation. His only reference to that investigation was, as noted above, that the pupil had "refused to disclose any information pertaining to the pictures."

The defendant contends that Sgt. Blunk failed to indicate that the interview with the pupil had disclosed, in essence, that her allegation that the defendant had taken her into his bedroom, taken down her clothes and taken pictures was not truthful. Had Sgt. Blunk made that known to the Municipal Judge to whom he submitted the affidavit, defendant contends, he would not have had probable cause to issue the warrant.

Sgt. Blunk testified at a suppression hearing on April 25, 2011. When asked, "What were you trying to convey to the judge with respect to the 2008 investigation" by his reference to the pupil's refusal to disclose any information about the pictures, Sgt. Blunk answered: "That an investigation was done on these allegations and that [the pupil] did not tell us at that time that there was nude pictures. She didn't disclose that nude pictures were taken when we interviewed her." (Hrg. Tr. 32).

The defendant also claims that the information, as related during the May 15, 2009, interview with the pupil, was stale.

## Discussion

Turning first to the issue of staleness, I agree with the government's contention that the information which the pupil provided was not stale. As stated in *U.S. v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (quoting *U.S. v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009) (citing *U.S. v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006))):

> [C]hild pornography is not a fleeting crime. And "because the crime [of child pornography] is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography."

5

It has been well-established and long accepted that those who obtain pornographic images of young children retain them. Thus, as also stated in *Frechette*, "images of child pornography can be easily duplicated and kept indefinitely even if they are sold or traded. In short, images of child pornography can have an infinite life span." *Id.* at 379.

Assuming there was probable cause to believe that the defendant had taken pictures of the pupil long before the May 15, 2009, interview, it remained highly likely that he still had them when the judge issued the warrant. There is no merit to the defendant's staleness claim.

The principal issue in this case is the defendant's contention that Sgt. Blunk's affidavit violates *Franks v. Delaware*, 438 U.S. 154 (1978). The statement about the pupil's refusal to disclose information about the pictures was, the defendant argues, either deliberately false or made with reckless indifference to the truth. Where a court finds such falsity or indifference, the warrant is invalid where "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id*. at 156.

At the outset, I note that the issue here might more properly be viewed as involving a material omission, rather than a materially false affirmative statement of fact. If I simply delete the statement that the pupil had "refused to disclose any information pertaining to the pictures", the affidavit clearly establishes probable cause.

Under *Franks*, it is more difficult for a defendant to prevail where he claims the affidavit lacks material information. *See, e.g.*, *U.S. v. Thomas*, 605 F.3d 300, 309 n.8 (6th Cir. 2010) (the "standard for omissions is more difficult to meet than for false affirmative statements."). Thus, as noted in *U.S. v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000), "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."

6

Based on what the affidavit contains, I conclude that it shows probable cause.

In any event, even if I judge it on the basis of what it arguably should have contained, I reach the same conclusion.

Thus, even if Sgt. Blunck had reported that the pupil had made and then retracted a substantially similar allegation eighteen months earlier, the issuing judge still properly could have found probable cause about events which the pupil claimed had happened since then.

The pupil's statements were internally consistent. She indicated that the defendant took pictures in several locations – which also suggested he did so on several occasions.

She did not elaborate or exaggerate. Indeed, her description of wrongful conduct was limited to posing her for and taking pictures. When asked about improper touching, she indicated that whatever touching occurred was not offensive (or more importantly, itself illegal). Similarly, she stated that, though the defendant had indicated an intent to take more pictures in the future, he had not done since "a year ago," and that "it does not happen much now because it is winter outside."

She also described how the defendant took and printed the pictures. This is a minor, but, in my view, significant corroborative detail giving a sense of veracity to her account.

I conclude, accordingly, that, even if Sgt. Blunk had told the issuing judge about the prior allegation and retraction, he still would have found probable cause and issued the warrant – and properly so.

This is not to condone Sgt. Blunk's failure to have been more forthcoming. Based on my observations during his suppression hearing testimony, I did not find him to have deliberately sought to mislead the judge. But his failure to tell the judge about the earlier allegation and its outcome

deprived the judge of the ability to consider all potentially pertinent factors. Indeed, it might have led a particularly cautious judge to decline to issue the warrant.

But that is not the issue. What matters is whether, on *de novo* review, what the affidavit says (and even on taking the omitted information into account) established probable cause to issue the warrant.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT the defendant' motion to suppress (Doc. 10) be, and the same hereby is denied.

Parties to file status report by October 31, 2011. Time deemed excludable in the interest of justice.

So ordered.

/s/ James G. Carr
Sr. United States District Judge